SIDLEY AUSTIN LLP
Penny P. Reid
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue
Suite 2000
Dallas, Texas 74201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

Matthew A. Clemente (admitted pro hac vice)
Dennis M. Twomey (admitted pro hac vice)
Alyssa Russell (admitted pro hac vice)
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Counsel for the Official Committee of Unsecured Creditors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] <br>             Debtor. | Case No. 19-34054-sgj11 |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, <br><br>             Plaintiff, <br><br>     v. <br><br> CLO HOLDCO, LTD. <br><br>             Defendant. | Adversary Case No. 20-03195 |

---

[1]     The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

**MOTION FOR PRELIMINARY INJUNCTION**                                     **Page i**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................1

II.   STATEMENT OF FACTS .............................................................................3

  A.    The CLO Holdco Transaction...............................................................3

  B.    The Dugaboy Note................................................................................5

  C.    The Debtor Files For Bankruptcy Amidst Pending Lawsuits................................6

III.  ARGUMENT AND AUTHORITIES.................................................................8

  A.    The Committee Can Demonstrate A Substantial Likelihood of Success on the Merits ................................................................................................9

    1.    Fraudulent Transfer – Texas Uniform Fraudulent Transfer Act................10

    2.    Money Had and Received....................................................15

    3.    Unjust Enrichment .......................................................16

    4.    Declaratory Judgment for Alter Ego Liability ...........................17

    5.    Conspiracy Claim.......................................................19

  B.    There Is A Substantial Threat of Irreparable Injury If the Injunction Is Not Issued Because Funds Would Most Likely Be Removed From the Court's Jurisdiction.21

  C.    Balancing The Hardships: The Harm to the Committee Outweighs Any Potential Harm to CLO Holdco..........................................................................22

  D.    The Public Interest Will Be Served By Issuance of the Injunctive Relief Sought 23

IV.   CONCLUSION.............................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*In re Acis Capital Mgmt., L.P.*,
584 B.R. 115 (Bankr. N.D. Tex. 2018)..............................................................................7, 13

*In re Acis Capital Mgmt., L.P.*,
No. 18-30264, 2019 WL 417149
(Bankr. N.D. Tex. Jan. 31, 2019),
*aff'd,* 604 B.R. 484 (N.D. Tex. 2019) ............................................................... *passim*

*In re Adelphia Commc'ns Corp.*,
376 B.R. 87 (Bankr. S.D.N.Y. 2007) ......................................................................17

*ASARCO LLC v. Ams. Min. Corp.*,
382 B.R. 49 (S.D. Tex. 2007) .........................................................................17, 18

*In re Atlas Fin. Mortg., Inc.*,
No. 13-32683-BJH-7, 2014 WL 172283
(Bankr. N.D. Tex. Jan. 14, 2014)..........................................................2, 8, 23

*In re Autobacs Strauss, Inc.*,
473 B.R. 525 (Bankr. D. Del. 2012) ......................................................................17

*Bourland v. State*,
528 S.W.2d 350 (Tex. App.—Austin 1975, writ ref'd n.r.e.).................................19

*Byrum v. Landreth*,
566 F.3d 442 (5th Cir. 2009) ..........................................................................9

*Chu v. Hong*,
249 S.W.3d 441 (Tex. 2008).........................................................................19

*City of Dallas v. Delta Air Lines, Inc.*,
847 F.3d 279 (5th Cir. 2017) .........................................................................10

*First Tech Fed. Credit Union v. Fisher*,
No. 14-18-00140-CV, 2020 WL 830052
(Tex. App.—Houston [14th Dist.] Feb. 20, 2020, pet. filed)..........................................4, 9, 15

*First United Pentecostal Church of Beaumont v. Parker*,
514 S.W.3d 214 (Tex. 2017).........................................................................19

*Griffin v. Box*,
910 F.2d 255 (5th Cir. 1990) .........................................................................8

*In re Heritage Org., LLC*,
  No. 04-35574-BJH-11, 2008 WL 5215688
  (Bankr. N.D. Tex. Dec. 12, 2008) .........................................................................12

*In re Highland Capital Mgmt., L.P.*,
  No. 19-34054-sgj11 (Nov. 24, 2020) ......................................................................7

*Holland Am. Ins. Co. v. Succession of Roy*,
  777 F.2d 992 (5th Cir. 1985) .................................................................................21

*Holt v. Kelso*,
  No. 3-11-258-CV, 2014 WL 858345
  (Tex. App.—Austin Feb. 26, 2014, no pet.) ..........................................................19

*In re Houston Drywall, Inc.*,
  No. 05-95161-H4-7, 2008 WL 2754526
  (Bankr. S.D. Tex. July 10, 2008) .....................................................................10, 11

*Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*,
  804 F.2d 1390 (5th Cir. 1986) ...............................................................................21

*Janvey v. Alguire*,
  647 F.3d 585 (5th Cir. 2011) ..............................................................................9, 22

*Janvey v. Nanes*,
  No. 3:15-CV-3171-N, 2016 WL 9527979
  (N.D. Tex. Oct. 5, 2016) ........................................................................................11

*Matter of Life Partners Holdings, Inc.*,
  926 F.3d 103 (5th Cir. 2019) .............................................................................10, 14

*Med-Cert Home Care, LLC v. Azar*,
  365 F. Supp. 3d 742 (N.D. Tex. 2019) ...............................................................8, 22

*Mowbray v. Avery*,
  76 S.W.3d 663 (Tex. App.—Corpus Christi 2002, pet. denied) .............................16

*In re OGA Charters, LLC*,
  554 B.R. 415 (Bankr. S.D. Tex. 2016) ......................................................... *passim*

*Redeemer Comm. of Highland Crusader Fund v.*
  *Highland Capital Mgmt., L.P.*, No. CV 12533-VCG,
  2017 WL 713633 (Del. Ch. Feb. 23, 2017) ..........................................................6, 7

*In re Soza*,
  542 F.3d 1060 (5th Cir. 2008) ................................................................................12

*Staats v. Miller*,
150 Tex. 581, 243 S.W.2d 686 (1951)...................................................................15

*Thompson v. Mayes*,
707 S.W.2d 951 (Tex. App.—Eastland 1986, writ ref'd n.r.e.)..............................16

*Travelers Cas. & Sur. Co. of Am. v. Padron*,
No. 5:15-CV-200-DAE, 2017 WL 9360906
(W.D. Tex. Aug. 2, 2017) ......................................................................................22

*U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*,
817 F. Supp. 2d 934 (N.D. Tex. 2011) .................................................................11

*Union Carbide Corp. v. UGI Corp.*,
731 F.2d 1186 (5th Cir. 1984) ................................................................................9

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981)................................................................................................8

*Wheeler v. Blacklands Prod. Credit Ass'n*,
627 S.W.2d 846 (Tex. App.—Fort Worth 1982, no writ) ....................................16

### Statutes/Rules

11 U.S.C. § 105(a) ...........................................................................................................1, 8

Tex. Bus. & Com. Code § 24.001 et seq. ...........................................................................10

Tex. Bus. & Com. Code § 24.005.........................................................................10, 11, 12

Fed. R. Bankr. P. 7065 ......................................................................................................1, 8

Fed. R. Civ. P. 65 ..................................................................................................................8

### Other

Charles Alan Wright, Arthur R. Miller, Mary Kay Kane,
11A FEDERAL PRACTICE & PROCEDURE § 2948.3 (2d ed. 1995) ...................................9

## MOTION FOR PRELIMINARY INJUNCTION[2]

The Official Committee of Unsecured Creditors (the "Committee") of Highland Capital Management, L.P. (the "Debtor"), by and through its attorneys, hereby files this motion for preliminary injunction ("Motion") and declaration in support (App. 096-097), pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 7065, and seeks an order from this Court, ordering that the "Proceeds"[3] shall continue to be held in the Registry of the Court and shall not be distributed to CLO Holdco, Ltd. ("CLO Holdco"), because (1) the Committee has a substantial likelihood of success on the merits of the adversary proceeding filed on behalf of the Debtor's Estate on December 17, 2020 ("Adversary Proceeding"); (2) there is a substantial threat of irreparable injury if the injunction is not issued; (3) the balance of hardships weighs in favor of granting an injunction; and (4) the public interest will be served by the injunction. Further, a preliminary injunction would otherwise preserve the status quo and relative position of the parties, as well as that of any assets that can be potentially used to satisfy valid claims against the bankruptcy estate.

## I.   PRELIMINARY STATEMENT

If this Court does not issue a preliminary injunction, irreparable harm will likely occur. That is, any funds released to CLO Holdco, a Cayman Islands entity, most likely will leave the country and go beyond the reach and jurisdiction of this Court and the Estate. CLO Holdco should be enjoined from receiving disputed funds from this Court's registry, particularly when, as here,

---

[2] In connection with this Motion, the Committee has filed an adversary complaint, pursuant to this Court's *Order Granting Extension of Time to File an Adversary Proceeding Against CLO Holdco, Ltd.* [Docket No. 1168]. The adversary complaint is expressly incorporated herein in its entirety.

[3] *See Order Denying Motion for Remittance of Funds Held in Registry of Court* [Docket No. 825] (defining "Proceeds" as including both the "CLO Proceeds," as defined in the *Motion for Remittance of Funds Held in Registry of Court* [Docket No. 590], together with the anticipated distributions of liquidation proceeds from the Dynamic and AROF funds (that is, the "Additional CLO Proceeds")).

such funds are likely assets that can be potentially used to satisfy valid claims against the Debtor's estate.

The central purpose of a preliminary injunction is to preserve the status quo and relative position of the parties pending a trial on the merits. Here, such purposes are best served by issuance of a preliminary injunction "to preserve the court's ability to render a meaningful decision on the merits." *See In re Atlas Fin. Mortg., Inc.*, No. 13-32683-BJH-7, 2014 WL 172283, at *3 (Bankr. N.D. Tex. Jan. 14, 2014); *In re OGA Charters, LLC*, 554 B.R. 415, 424 (Bankr. S.D. Tex. 2016). Importantly, the Committee need not prove that it will ultimately prevail on the merits for the relief requested in this motion to follow. The Committee need only establish a substantial likelihood of success on the merits by alleging a *prima facie* case. For the reasons stated herein, this low bar is met.

Moreover, the balance of harms and the public interest favor injunctive relief. Any injunction granted pursuant to this motion is temporary and merely preserves the status quo until such time as the Adversary Proceeding can be resolved. And keeping the Proceeds in the Court's registry ensures that such funds will not be depleted. However, any release of such funds to CLO Holdco may deprive the Debtor of its only opportunity to obtain redress for fraudulent or improper transactions involving CLO Holdco. The balance of harms weighs in favor of injunctive relief. Likewise, preserving potential assets for trial on the merits serves the public interest. *In re OGA Charters,* 554 B.R. at 428.

To be sure, CLO Holdco is not some distant third party. In fact, as the Court has previously observed, Charitable DAF, the parent of CLO Holdco, "was seeded with contributions from **Highland**, is managed/advised by **Highland**, and whose **independent trustee is a long-time friend of Highland's chief executive officers, Mr. Dondero**… ." *In re Acis Capital Mgmt., L.P.*,

Case No. 18-30264, 2019 WL 417149 (Bankr. N.D. Tex. Jan. 31, 2019), *aff'd,* 604 B.R. 484 (N.D. Tex. 2019) (emphasis in original). Based on the foregoing and the reasons that follow, injunctive relief is proper.

## II.  STATEMENT OF FACTS[4]

### A. The CLO Holdco Transaction

On December 28, 2016, Jim Dondero ("Dondero") effected a convoluted, four-step transaction, in which he caused the Debtor to exchange three separate assets with a total fair market value of approximately $23.4 million for a 97.6835% interest in an overvalued promissory note on which the Dugaboy Investment Trust ("Dugaboy") (i.e., Dondero's family trust regarding which Dondero has the power to remove/appoint trustees)[5] was the payor, and The Get Good Nonexempt Trust ("Get Good") was the payee.[6] The assets included in the exchange were transferred four times in a series of transactions (collectively, the "CLO Holdco Transaction") executed contemporaneously and ultimately funneled down to CLO Holdco. Notably, Dondero effectively owns and controls both Get Good and Dugaboy, and Grant James Scott III ("Scott"), Dondero's

---

[4] The Committee hereby expressly incorporates by reference the Adversary Complaint concurrently filed herewith.

[5] *See* Appendix at APP 021-062 [DOC_00459140] (attaching Dugaboy Investment Trust Agreement which in Section 3.1(a)(i) states that "Jim is the primary beneficiary of the trust.")); *See id.* (confirming that "Grant James Scott, III" is the "Independent Trustee" of Dugaboy").

[6] Out of an abundance of caution, "Get Good" shall include all three trusts including "The Get Good Trust," "The Get Good Nonexempt Trust No. 1," and "The Get Good Nonexempt Trust No. 2," due to the fact that the record reflects that, at times, they have been referred to interchangeably, and they share the same EIN number (75-6601385), according to tax documents.

long-time friend and former college roommate is a purported independent trustee for both Get Good and Dugaboy.[7]

*First*, Get Good transferred a 97.6835% interest in a $23,817,639.58 million promissory note from Dugaboy, of which Get Good was the payee, to the Debtor (the "Dugaboy Note").[8]  In exchange, the Debtor transferred to Get Good the following assets: (1) $2,032,183.24 (based on the November 30, 2016 NAV) Series A Interests in Highland Capital Loan Fund, L.P. (the "Series A Interests"); (2) $8,710,000.00 (based on the December 27, 2016 MV) participation interest in call options of American Airlines Group, Inc. (the "AA Interests"); and (3) a participation interest in certain Highland Crusader Fund, L.P. and Highland Crusader Fund II, Ltd. shares, as well as a tracking interest in certain participation shares of Highland Crusader Fund II, Ltd., collectively valued at $12,625,395.44 (based on the November 30, 2016 NAV) (the "Crusader Interests") (collectively, with the Series A Interests and the AA Interests, the "Transferred Assets").[9]  This transaction was effectuated by a Purchase and Sale Agreement executed by Dondero, on behalf of the Debtor, and Scott, on behalf of Get Good.

*Second*, Get Good donated the Transferred Assets to Highland Dallas Foundation by exercise of discretion, executed by Scott in his capacity as trustee of Get Good.[10]  At that time, the Highland Dallas Foundation's directors were Dondero, Scott and Mary Jalonick ("Jalonick").[11]

---

[7] *See* Appendix at APP 021-062 [DOC_00459140] (attaching Dugaboy Investment Trust Agreement which in Section 3.1(a)(i) states that "Jim is the primary beneficiary of the trust.")); *See id.* (confirming "Grant James Scott, III" as "Independent Trustee" of Dugaboy).

[8] *See* Appendix at APP 001-016 [DOC_00231365] (reflecting Dugaboy Note in the amount of $23,817,639.58).

[9] *See* Appendix at APP 001-016 [DOC_00231365] (Purchase and Sale Agreement).

[10] *See* Appendix at APP 086-090 [Highland/PEO-032698] (Donative Assignment of Interests); Appendix at APP 091-095 [Highland/PEO-032707] (Exercise of Discretion).

[11] Both Dondero and Scott served as directors on multiple boards together, including but not limited to the Highland Dallas Foundation, Inc., Highland Santa Barbara Foundation, Inc., and Highland Kansas City Foundation, Inc. (the "Highland Foundations"); that is, boards that effectively owned DAF Holdco, DAF, and CLO Holdco, and where Dondero, likewise, served as President.

**MOTION FOR PRELIMINARY INJUNCTION**                                                                    **Page 4**

*Third*, Highland Dallas Foundation contributed the Transferred Assets to Charitable DAF Holdco by unanimous written consent, executed by Dondero, Scott, and Jalonick, each in their capacity as the sole directors of Highland Dallas Foundation.[12]

*Fourth*, by an omnibus assignment agreement,[13] Charitable DAF Holdco transferred the Transferred Assets to Charitable DAF Fund, which immediately transferred the Transferred Assets to CLO Holdco. Scott signed on behalf of each entity, as director of Charitable DAF Holdco, managing member of Charitable DAF, and director of CLO Holdco to effectuate these transfers.[14]

### B. The Dugaboy Note

As the first step of the CLO Holdco Transaction, Get Good transferred more than 97% of the Dugaboy Note to the Debtor. What is not evident from the transaction documents, however, is that the note was modified shortly before the CLO Holdco Transaction.

An original promissory note was issued on December 7, 2012, whereby Dugaboy promised to pay Get Good the principal sum of $23,595,920, plus interest (the "Original Dugaboy Note"). Dondero exercised complete control over whether any payments were made on the Original Dugaboy Note.[15] Over the course of four years, no payments were made on the principal or the interest accrued.[16] And nearly four-years after its issuance and halfway into its term for maturity, the Original Dugaboy Note was effectively cancelled pursuant to an apparently unilateral, restructuring that would lengthen the prior term of ten years to twenty years (i.e., by an additional

---

[12] *See* Appendix at APP 073-078 [Highland/PEO-032603] (Unanimous Written Consent of Directors).

[13] *See* Appendix at APP 079-085 [Highland/PEO-032686] (Omnibus Assignment Agreement).

[14] *Id.*

[15] *See* Appendix at APP 021-062 [DOC_00459140] (attaching Dugaboy Investment Trust Agreement which in Section 3.1(a)(i) states that "Jim is the primary beneficiary of the trust.")).

[16] *See* Appendix at APP 017-018 [CONTROL_0000068249-250] (reflecting insufficient payments of $0.00 over the course of four years such that principal was not reduced, and further, displaying payment history for total $23,395,920 note payable amount, per sub-amounts of $15,482,680 and $8,113,240 (together totaling $23,395,920)).

fourteen years). The restructured note, dated October 31, 2016, reflected a new, principal sum of $23,817,639.58 on terms completely prejudicial to the initial payee (i.e., Get Good) and in favor of the payor, Dugaboy, who after the restructured note was issued, was granted an *additional* fourteen years to pay off the note.[17]

On its face, this restructuring evidences the high level of risk associated with the Dugaboy Note, including the actual failure to make *any* payments on the note and the unilateral restructuring of the note on terms more favorable to the payor rather than the payee-recipient. Under the direction of Dondero, the Debtor would accept an interest in the Dugaboy Note as its new payee-recipient in exchange for highly valuable assets of the Debtor that would be funneled to the Cayman Islands in the care of CLO Holdco.

### C. The Debtor Files For Bankruptcy Amidst Pending Lawsuits.

Shortly before and after the CLO Holdco Transaction, the Debtor was facing various arbitrations and litigations, which ultimately resulted in judgments against the Debtor, stemming from fraudulent transactions and breaches of fiduciary duties.

On July 5, 2016, the Redeemer Committee of the Highland Crusader Fund ("Redeemer Committee"), filed a complaint in Delaware Chancery Court against the Debtor, seeking a limited status quo order, a declaration that the Redeemer Committee had "cause" to terminate the Debtor as manager, and a declaration that the Debtor was not entitled to indemnification, as a result of the Debtor's failure to distribute proceeds to investors of various funds.[18] Also on July 5, 2016, the Redeemer Committee filed a demand for arbitration against the Debtor, ultimately bringing claims

---

[17] *See* Appendix at APP 001-016 [DOC_00231365] (reflecting Original Dugaboy Note in the amount of $23, 595,920.00 as *replaced* by new note for $23,817,639.58).

[18] *Redeemer Comm. of Highland Crusader Fund v. Highland Capital Mgmt., L.P.*, No. CV 12533-VCG, 2017 WL 713633, at *2 (Del. Ch. Feb. 23, 2017).

of violations of fiduciary and contractual duties.[19] The CLO Holdco Transaction occurred less than six months later. On May 9, 2019, the arbitration panel issued a final award in favor of the Redeemer Committee in the total amount of $190.8 million.[20]

And on September 8, 2016, less than three months prior to the CLO Holdco Transaction, the Debtor sued Joshua Terry, a recently terminated former employee of the Debtor, who would assert his own counter-claims and demand arbitration against the Debtor, Dondero, Acis Capital Management, L.P. ("Acis LP"), Acis Capital Management GP, L.L.C. ("Acis GP," and with Acis LP, "Acis") and others.[21] Acis is a member of the Committee in the Bankruptcy Proceeding.

Because Dondero knew that the Debtor could, and likely would, become liable for its fraudulent actions, and ultimately, the various judgment and awards rendered against the Debtor, he began moving assets out of the Debtor's estate into a Cayman Islands entity, with the intent to hinder, delay, or defraud the Debtor's creditors. The transfer of assets out of the Debtor's estate as a part of the CLO Holdco transaction, for less than reasonably equivalent value, is one such transaction. The CLO Holdco Transaction was structured to move assets out of the Debtor's estate out of the reach of the Debtor's creditors, yet ultimately still under the control of Dondero.[22]

On October 16, 2019, less than three years after the CLO Holdco Transaction, the Debtor filed for bankruptcy.

---

[19] *Id.*

[20] *See In re Highland Capital Mgmt., L.P.*, No. 19-34054-sgj11 at 5 (Nov. 24, 2020) [Dkt. No. 1473] (reflecting disclosure statement for amended plan of reorganization of Debtor ).

[21] *See In re Acis Capital Mgmt., L.P.*, 584 B.R. 115 (Bankr. N.D. Tex. 2018).

[22] *See* Appendix at APP 063-072 [DOC_01698978 at 2] (providing list of "James Dondero's Related Interests" and listing "CLO Holdco, Ltd. as under the "Indirect Control" of Dondero).

### III.    ARGUMENT AND AUTHORITIES

Federal Rule of Civil Procedure 65, as incorporated by Federal Rule of Bankruptcy Procedure 7065, enables bankruptcy courts to issue preliminary injunctions pending trial. *In re Atlas*, 2014 WL 172283, at \*5. Likewise, bankruptcy courts have the power to issue a preliminary injunction pursuant to 11 U.S.C. § 105(a). *In re OGA Charters,* 554 B.R. at 428 ("[T]his Court finds that it possesses the power to issue a preliminary injunction, pursuant to § 105(a) . . . ." (citing *Law v. Siegel*, 571 U.S. 415, 423 (2014))).

The central purpose of a preliminary injunction is to preserve the status quo. *Griffin v. Box*, 910 F.2d 255, 263 (5th Cir. 1990); *see also Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395, (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."); *Med-Cert Home Care, LLC v. Azar*, 365 F. Supp. 3d 742, 748 (N.D. Tex. 2019) ("The purpose of a preliminary injunction is to preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits."). This Court may issue injunctive relief "to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested." *In re Atlas*, 2014 WL 172283, at \*3; *In re OGA Charters,* 554 B.R. at 424 ("A preliminary injunction seeks to 'prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.'" (quoting *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985))).

The four elements a plaintiff must establish to secure a preliminary injunction are: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any

harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Id.* (quoting *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011)).

Here, all four elements are satisfied. *First*, there is a substantial likelihood of success that the Committee will establish its estate claims against CLO Holdco. *Second*, a preliminary injunction will preserve the status quo, preserve estate assets pending trial on the merits, and prevent irreparable injury that would likely ensue should CLO Holdco (a Cayman Islands company) be allowed to remove the Proceeds beyond the reach of this Court's jurisdiction. *Third*, granting the preliminary injunction merely maintains the status quo; that is, CLO Holdco will suffer no significant harm if the Proceeds remain in the Court Registry or harm that would outweigh the Court's interest in preserving the Debtor's estate. And, *fourth*, the public interest will be served by issuance of the injunctive relief sought because preserving any "assets that can be potentially used to satisfy valid claims against the bankruptcy estate" serves the public interest. *In re OGA Charters,* 554 B.R. at 432.

## A. The Committee Can Demonstrate A Substantial Likelihood of Success on the Merits.

At this stage, the Committee need not show that it will ultimately prevail at trial. Rather, to show a likelihood of success on the merits, the Committee need only present a *prima facie* case. *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1189 (5th Cir. 1984) (requiring a *prima facie* case for preliminary injunctive relief); *see also* Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, 11A FEDERAL PRACTICE & PROCEDURE § 2948.3 (2d ed. 1995) ("All courts agree that plaintiff must present a prima facie case but need not show that he is certain to win." (footnote omitted))); *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009); *Janvey*, 647 F.3d at 595–96 (The movant's "evidence in the preliminary injunction proceeding is not required to prove his entitlement to summary judgment."). The Court "look[s] to 'standards provided by the substantive

law'" to determine likelihood of success on the merits. *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 286 (5th Cir. 2017).

As demonstrated herein, Plaintiffs can establish a substantial likelihood of success on the merits for their claims of actual fraudulent transfer, constructive fraudulent transfer, money had and received, alter ego, unjust enrichment, and conspiracy.

### 1. *Fraudulent Transfer – Texas Uniform Fraudulent Transfer Act*

As an initial matter, the first three elements of actual fraudulent transfer (section 24.005(a)(1)), and constructive fraudulent transfer (sections 24.005(a)(2) are the same under the Texas Uniform Fraudulent Transfer Act ("TUFTA").[23] *See* Tex. Bus. & Com. Code § 24.005(a); *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 120 (5th Cir. 2019). Those elements are: (1) a creditor; (2) a debtor; and (3) the debtor transferred assets "within a reasonable time" before or after the creditor's claim arose. Tex. Bus. & Com. Code § 24.005(a).

"Although the definition of 'reasonable time' under TUFTA is not specifically defined, the four year statute of limitations suggests that a 'reasonable time' is within four years." *In re Houston Drywall, Inc.*, No. 05-95161-H4-7, 2008 WL 2754526, at *19 n.23 (Bankr. S.D. Tex. July 10, 2008) (citing *Williams v. Performance Diesel, Inc.*, No. 14-00-00063-CV, 2002 WL 596414, at *4 (Tex. App.—Houston [14th Dist.] Apr. 18, 2002, no pet.)). In this case, the transfers occurred approximately 3 years prior to the commencement of the bankruptcy proceedings.

### a. Actual Fraudulent Transfer

The Committee has a substantial likelihood of success on the merits concerning its actual fraudulent transfer claim under TUFTA because the CLO Holdco Transaction satisfies the above-

---

[23] Tex. Bus. & Com. Code § 24.001 et seq.

mentioned, three factors and indicates several of the indicia of fraud (listed below) pursuant to TUFTA's section 24.005(b).

To plead *actual fraudulent transfer* under section 24.005(a)(1), in addition to the three factors above, a claimant must also plead fraudulent intent to "hinder, delay, or defraud any creditor of the debtor." Tex. Bus. & Com. Code § 24.005(a)(1); *Janvey v. Nanes*, No. 3:15-CV-3171-N, 2016 WL 9527979, at *3 (N.D. Tex. Oct. 5, 2016). Section § 24.005(b), provides several non-exclusive indicia, factors or "badges of fraud" that this Court may consider in determining actual intent. Tex. Bus. & Com. Code § 24.005(b); *In re Houston Drywall,* 2008 WL 2754526, at *20. Those badges of fraud are as follows:

1. the transfer or obligation was to an insider;
2. the debtor retained possession or control of the property transferred after the transfer;
3. the transfer or obligation was concealed;
4. before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
5. the transfer was of substantially all the debtor's assets;
6. the debtor absconded;
7. the debtor removed or concealed assets;
8. the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
9. the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
10. the transfer occurred shortly before or shortly after a substantial debt was incurred; and
11. the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Fifth Circuit courts have held that factual allegations relating to at least three (3) badges of fraud are sufficient to plead an actual fraudulent transfer claim. *See U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, 817 F. Supp. 2d 934, 942 (N.D. Tex. 2011) (alleging three (3) badges of

fraud was sufficient to plead fraudulent transfer); *see also In re Heritage Org., LLC*, No. 04-35574-BJH-11, 2008 WL 5215688, at *7 (Bankr. N.D. Tex. Dec. 12, 2008) (same); *In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008) (quoting *Roland v. United States*, 838 F.2d 1400, 1402–03 (5th Cir. 1988)).

The CLO Holdco Transaction constitutes actual fraudulent transfer because it involved a transfer of the debtor's assets within a reasonable time before the creditor's claim arose (i.e., the first three elements), and several indices or "badges" of fraud were attendant to that transaction (i.e., the fourth element). *See* Tex. Bus. & Com. Code § 24.005(b).

The December 28, 2016, CLO Holdco Transaction removed money from the Debtor to an insider of Dondero. Notably, the CLO Holdco Transaction effected the transfer of approximately $24 million in Transferred Assets of the Debtor in exchange for an overvalued note from Dugaboy, a trust for the benefit of Dondero and for which Scott was the independent trustee. As this Court has previously found, Scott is a long-time friend of Dondero and independent trustee of CLO Holdco's parent company, Charitable DAF. *In re Acis Capital Mgmt.*, 2019 WL 417149. While the Debtor's assets moved through several entities before settling at CLO Holdco, all of those entities were subject to either Scott and/or Dondero's control. As stated above, both Dondero and Scott were directors in the Highland Foundations. And Scott effected the CLO Holdco Transaction on behalf of DAF Holdco, DAF and CLO Holdco, as respectively, "Director," "Managing Member," and "Director."[24] Thus, along with Dondero, Scott effected the contemporaneous transfers in the shoes of the transferor *and* transferee.[25] The circumstances of the CLO Holdco Transaction reflect the insider-relationship(s) and inherent conflicts of interest.

---

[24] *See* Appendix at APP 079-085 [Highland/PEO-032686] (Omnibus Assignment Agreement).

[25] *See* Appendix at APP 063-072 [DOC_01698978 at 2] (providing list of "James Dondero's Related Interests" and listing "CLO Holdco, Ltd. as under the "Indirect Control" of Dondero ).

Moreover, the CLO Holdco Transaction was concealed, not the least of which by a convoluted, multi-step contemporaneous series of transfers that would remove the Debtor's assets to the Cayman Islands, beyond the reach of the Debtor's creditors, at a time when the Debtor was embroiled in ongoing, material litigation with Redeemer Committee, Acis, and others.[26] Likewise, the value of the Dugaboy Note received by the Debtor was not for reasonably equivalent value of the Transferred Assets.[27] Not only did Dondero have unilateral ability to control payment, but he also had already executed on that ability, just prior to maturation, and having made no payments towards principal or accrued interest, as evidenced by the unilateral restructuring of that note, prior to the CLO Holdco Transaction. And, less than three years after the CLO Holdco transaction, the Debtor would file for bankruptcy.[28] These badges of fraud, among others, meet the low threshold of establishing a *prima facie* case of actual fraudulent transfer.

Thus, and notwithstanding any ultimate findings or merits-based determinations of the Court at trial, the Committee's allegations establish a substantial likelihood of success on the merits concerning its actual fraudulent transfer claim under TUFTA.

b.    Constructive Fraudulent Transfer

The Committee also has a substantial likelihood of success on the merits concerning its constructive fraudulent transfer claims under TUFTA because the CLO Holdco Transaction satisfies the above-mentioned, three factors (i.e., debtor transferred assets to creditor within a reasonable time before the creditor's claim arose), and the debtor was financially vulnerable or insolvent at the time of the transaction.

---

[26] *See In re Acis Capital Mgmt.*, 584 B.R. 115.

[27] *Compare* Appendix at APP 019-020 [CONTROL_0000068251] (Original Dugaboy Note) *with* Appendix at APP 001-016 [DOC_00231365] (Restructured Dugaboy Note).

[28] The Debtor filed for Bankruptcy on October 16, 2019.

In addition to the three, aforementioned factors, a claimant pleading *constructive fraudulent transfer* under section 24.005(a)(2), must also "plead facts demonstrating: (1) a lack of reasonably equivalent value for the transfer; and (2) that the transferor was 'financially vulnerable' or insolvent at the time of the transaction." *Matter of Life Partners Holdings*, 926 F.3d at 120. Pleading intent is not required.

To establish financial vulnerability or insolvency, a movant must establish that the debtor/transferor (1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due. Tex. Bus. & Com. Code

Here, the CLO Holdco Transaction constitutes a constructive fraudulent transfer because, in addition to the foregoing factors, the Debtor was financially vulnerable. That is, the Debtor either intended to incur, and/or believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due. It cannot be disputed that the Debtor was under the control of Dondero, who as President and founder of Debtor, certainly was privy to the mounting material litigation risk(s) and related liability facing the Debtor. The level of litigation risk alone facing the Debtor was material as a matter of law and establishes that Dondero reasonably should have believed that the Debtor would incur debts (both litigation and commercial debts arising in the ordinary course) beyond its ability to pay as they became due. Indeed, that situation is exactly what ultimately resulted in these proceedings. This fact establishes the Debtor's insolvency or financial vulnerability, in addition to the other factors evidencing constructive fraud.

Based on the foregoing, the Committee has a substantial likelihood of success on the merits concerning its constructive fraudulent transfer claims under TUFTA.

### 2. *Money Had and Received*

The Committee has a substantial likelihood of success on the merits concerning its money had and received claim against CLO Holdco.

To state a cause of action for money had and received, a claimant need only prove that in equity and good conscience, the money belongs to it. *Staats v. Miller*, 150 Tex. 581, 584, 243 S.W.2d 686, 687 (1951). "The action does not require a showing of wrongdoing, but rather looks only to the justice of the case and inquires whether the defendant has received money that rightfully belongs to another." *First Tech Fed. Credit Union v. Fisher*, No. 14-18-00140-CV, 2020 WL 830052, at *3 (Tex. App.—Houston [14th Dist.] Feb. 20, 2020, pet. filed). Under Texas substantive law,

> [A] cause of action for money had and received is 'less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which belongs to the [claimant].

*Staats*, 150 Tex. at 585, 243 S.W.2d at 687–88.

Here, the facts show that the Proceeds held in the Court's registry in equity and good conscience belong to the Debtor due to the actual and/or constructive fraudulent transfer(s) of Dondero and CLO Holdco. But for their fraud, the money never would have left the Debtor's estate. Under the circumstances related above, concerning the CLO Holdco Transaction, the justice of the case establishes that CLO Holdco has received money that rightfully belongs to the Debtor's estate. Thus, the Committee has a substantial likelihood of success on the merits concerning this claim.

### 3. *Unjust Enrichment*

Likewise, the unjust enrichment doctrine may provide further basis for recovery, and the Committee has a substantial likelihood of success on the merits in proving that CLO Holdco has been unjustly enriched. In *Mowbray v. Avery*, 76 S.W.3d 663, 680 (Tex. App.—Corpus Christi 2002, pet. denied), the court explained that "[t]he unjust enrichment doctrine . . . is based on the equitable principle that one who receives benefits which would be unjust for him to retain ought to make restitution." *Id.* at 679 (citing *Bransom v. Standard Hardware, Inc.*, 874 S.W.2d 919, 927 (Tex. App.—Fort Worth 1994, writ denied)). "A party may recover under an unjust enrichment theory where a person has obtained a benefit from another due to fraud, duress or taking of undue advantage." *Id.*

When, as here, creditors' property has been fraudulently conveyed, such creditors are entitled to the creation of a constructive trust on such property. *See, e.g., Wheeler v. Blacklands Prod. Credit Ass'n*, 627 S.W.2d 846 (Tex. App.—Fort Worth 1982, no writ) (imposing constructive trust on behalf of unsecured creditor pursuant to unjust enrichment doctrine); *see also Thompson v. Mayes*, 707 S.W.2d 951, 954 (Tex. App.—Eastland 1986, writ ref'd n.r.e.) (noting a suit to impose a constructive trust "is an action in equity to prevent unjust enrichment of a person who has wrongfully acquired property"). As related above, CLO Holdco has been unjustly enriched due to the fraudulent transfers of Debtor's assets, for which this Court may impose a constructive trust remedy on the proceeds of such wrongdoing. *See Wheeler*, 627 S.W.2d at 851 ("[T]he law imposes a constructive trust on that property **and any proceeds** from the sale thereof, **or revenues therefrom**.").

Based on the foregoing allegations, concerning which the Committee has a substantial likelihood of success in proving at trial, CLO Holdco been unjustly enriched. Thus, this Court

may impose a constructive trust remedy on the proceeds of CLO Holdco's, Dondero's and Scott's wrongdoing.

### 4.    *Declaratory Judgment for Alter Ego Liability*

The Committee also has a substantial likelihood of success on the merits concerning its alter ego claim.  The corporate entity / fiction may be disregarded, even though corporate formalities have been observed and corporate and individual property have been kept separately, when the corporate form has been used as part of a basically unfair device to achieve an inequitable result.  *See In re Autobacs Strauss, Inc.*, 473 B.R. 525, 556 (Bankr. D. Del. 2012).

Courts look to several factors to determine whether alter ego liability exists, including but not limited to the following: "(a) the subsidiary is undercapitalized; (b) the subsidiary was insolvent at the relevant time; (c) the companies failed to observe corporate formalities (d) the subsidiary did not pay dividends to the parent; (e) there was a siphoning of the subsidiary's funds by the dominant stockholder; (f) the absence of corporate records; and (g) whether the corporation is merely a façade for the operations of the dominant stockholder or stockholders."  *Id.*; *see also ASARCO LLC v. Ams. Min. Corp.*, 382 B.R. 49, 65-66 (S.D. Tex. 2007) (applying Delaware law to veil piercing claim under internal affairs doctrine); *cf. In re Adelphia Commc'ns Corp.*, 376 B.R. 87, 107–08 (Bankr. S.D.N.Y. 2007) (discussing veil piercing claim as applicable to partnerships under uniform partnership law and discussing Delaware standards).  These factors are "not exhaustive, no single factor is dispositive, and [only] some combination is required."  *In re Autobacs Strauss,* 473 B.R. at 556.

Likewise, "[t]o state a veil-piercing claim, the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *ASARCO*, 382 B.R. at 66.  "[F]ederal courts applying Delaware law have

held that a party may pierce the veil on an alter ego theory when there is a misuse of the corporate form or an overall element of injustice or unfairness." *Id.* "Delaware permits exercise of this 'broad' equitable power only where equity demands." *Id.* Importantly, "the alter ego claim is available where equitable relief is required to prevent injustice," as in the context of evidence of fraudulent transfer. *See ASARCO,* 382 B.R. at 84.

Here, alter ego liability applies because equity demands it. The fraudulent transfers discussed above warrant use of this Court's broad equitable power to ensure that the type of fraud perpetrated by Dondero, pursuant to the CLO Holdco Transaction, is redressed for the benefit of the defrauded estate. Among other reasons, Dondero used DAF Holdco, the DAF, and CLO Holdco as an alter ego of himself and the Debtor (which was controlled by Dondero) to siphon funds away from the Debtor's estate at a time when the Debtor was facing mounting, material litigation risk and pending liabilities, among other risks. Dondero used the Debtor as a façade for his operations, at all times standing on both sides of the CLO Holdco Transaction steps/transfers in the capacity as both a transferor and a transferee. Essentially, Dondero made use of DAF Holdco, the DAF, and CLO Holdco as a business conduit of the Debtor, to funnel assets away from creditors and beyond the jurisdiction of U.S. courts. Due to his control over these entities, Dondero was able to transfer estate assets for less than reasonably equivalent value, and without the safeguards normally accorded to such asset transfers inherent in the corporate form, due to his effective control from both sides of the transactions.

Applicable here, courts disregard the corporate fiction when it is used as a means of perpetrating fraud; when it is operated as a business conduit of another corporation; when it is resorted to as a means of evading existing legal obligations, such as those that Dondero and Debtor

are obligated unto the Debtor's creditors; and when the corporate fiction is relied upon as a protection of a crime or to justify a wrong, as in the face of the fraudulent scheme related above.

Based on the arguments above and cited throughout this motion, the Committee has a substantial likelihood of success on the merits of its alter ego liability claim. Thus, a preliminary injunction is warranted.

### 5. *Conspiracy Claim*

The Committee has a substantial likelihood of success on the merits of its conspiracy claim. CLO Holdco is liable for conspiring to perpetrate the fraudulent transfer scheme reflected in the CLO Holdco Transaction. Under Texas law, agreeing to participate in the commission of a statutory violation or a tort makes one liable for conspiracy. *See Chu v. Hong*, 249 S.W.3d 441, 444 n.4 (Tex. 2008). An action for civil conspiracy has five elements: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action;[29] (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214 (Tex. 2017). The agreement and the overt acts establish the conspiracy. It is not required that each and every act of a conspirator be shown to have been in concert with the others to establish liability; neither is it required that all participants combine at a given time prior to each transaction. *Bourland v. State*, 528 S.W.2d 350, 354 (Tex. App.—Austin 1975, writ ref'd n.r.e.).

Here, the elements are satisfied. The Debtor (under the direction of Dondero) acted in combination with CLO Holdco among others (under the direction of Scott),[30] and further, in

---

[29] When a defendant benefits from another's wrongful conduct and took steps that facilitated his receipt of that benefit, the jury can infer the defendant had a meeting of the minds with the individual who committed the wrongful acts. *Holt v. Kelso*, No. 3-11-258-CV, 2014 WL 858345 (Tex. App.—Austin Feb. 26, 2014, no pet.).

[30] *See* Appendix at APP 079-085 [Highland/PEO-032686] (Omnibus Assignment Agreement).

combination with Dugaboy and Get Good (under the direction of both Dondero and Scott)[31] to remove the Debtor's Assets beyond the reach of the Debtor's creditors, during a time at which the Debtor was financially vulnerable. CLO Holdco participated in the scheme to obtain the Transferred Assets, which would remain accessible by the Debtor through its shared services agreement. Dugaboy and Get Good are insiders of Dondero and facilitated the scheme to swap the Debtor's assets for the Dugaboy Note, worth substantially less in value than the Transferred Assets.

CLO Holdco, Dugaboy, and Dondero and Scott took overt steps to benefit from the CLO Holdco Transaction and to cause the fraudulent transfer of nearly $24 million of the Debtor's assets. This caused injury to the Debtor's estate and its creditors. Dondero and Scott knowingly perpetrated their fraudulent scheme, as both had superior knowledge and sat on both sides of the inside transaction. Scott acted as the control person for CLO Holdco and as independent trustee of *both* Get Good and Dugaboy. Dondero acted as the control person of the Debtor and effectively owned and controlled *both* Get Good and Dugaboy. Likewise, both men sat on the boards of the foundations that would receive the purported "gifts" from the Debtor, in the form of the Debtor's converted / distressed assets.

CLO Holdco, under Scott's direction; the Debtor, under Dondero's direction; and Dugaboy and Get Good, under the direction of both Dondero and Scott, would effect the CLO Holdco Transaction, exchanging the Dugaboy promissory note for the Debtor's Transferred Assets. Dondero and Scott necessarily knew the Dugaboy promissory note was not equivalent value for the Transferred Assets, not only due to their respective, control positions in Dugaboy and Get

---

[31] *See* Appendix at APP 021-062 [DOC_00459140] (attaching Dugaboy Investment Trust Agreement which in Section 3.1(a)(i) states that "Jim is the primary beneficiary of the trust.")); *See id.* (confirming "Grant James Scott, III" as "Independent Trustee" of Dugaboy).

Good, the Debtor and CLO Holdco, but also because the Dugaboy Note itself reflected less than reasonably equivalent value, as reflected in that note's unilateral restructuring that grossly prejudiced the payee-recipient. CLO Holdco, Dugaboy and Get Good, and Dondero and Scott were unjustly enriched as a result of the CLO Holdco Transaction, and this Court should enjoin any release of the disputed funds in connection therewith, pending trial on the merits.

Because there is a substantial likelihood that the Committee will recover on its conspiracy claim and recoup the Proceeds currently held in the Court's registry back into the estate, a preliminary injunction is warranted to preserve the Debtor's assets pending trial.

### B. There Is A Substantial Threat of Irreparable Injury If the Injunction Is Not Issued Because Funds Would Most Likely Be Removed From the Court's Jurisdiction.

Release of the Proceeds from the Court's registry to CLO Holdco, a Cayman Islands entity, would remove the Proceeds beyond the reach of this Court, resulting in irreparable injury for which there is no adequate remedy at law. *In re OGA Charters*, 554 B.R. at 424 ("A preliminary injunction seeks to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits."). If the injunction is not issued, the relative rights of the parties would not be preserved and this Court's ability to render a meaningful decision on the merits would be mooted. To show irreparable injury, "it is not necessary to demonstrate that harm is inevitable and irreparable. The [Committee] need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986). Likewise, "there must be more than an unfounded fear on the part of the applicant." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).

Here, the significant concerns underlying the Committee's request that the Proceeds be withheld include the fact that CLO Holdco and Charitable DAF are part of Dondero's web of

complex, interrelated entities; CLO Holdco's interests in at least one of the funds were initially owned by the Debtor and transferred to CLO Holdco, while both were under the control of Dondero; and this Court has previously found that Dondero has a well-documented history of engaging in improper or fraudulent transactions, including fraudulent transfers.[32]

Given this history and the fact that any released funds would likely be irrecoverable, there is a substantial threat of irreparable injury, and this Court should grant the injunction so as to preserve the estate and potential recoveries. *See Janvey*, 647 F.3d at 600 (holding that "dissipation of the assets ... would impair the court's ability to grant an effective remedy," and thus the court found a threat of irreparable harm for which there was no adequate remedy at law).

### C. Balancing The Hardships: The Harm to the Committee Outweighs Any Potential Harm to CLO Holdco.

There is greater harm in denying the injunction that in granting it. In balancing the hardships, the Committee must "establish that [its] irreparable harm is greater than the hardship that the preliminary injunction would cause [CLO Holdco]." *Travelers Cas. & Sur. Co. of Am. v. Padron*, No. 5:15-CV-200-DAE, 2017 WL 9360906, at *12 (W.D. Tex. Aug. 2, 2017). That is, the Committee "must show that granting the injunction would do less harm to [CLO Holdco] than denying the injunction would do to [the Committee]." *Id.*

Here, the equitable argument for granting the injunction and continuing to order the Proceeds to be held in the Court Registry is straightforward. A preliminary injunction merely preserves the relative positions of the parties and maintains the status quo. *Med-Cert Home Care*, 365 F. Supp. 3d at 748 ("The purpose of a preliminary injunction is to preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a

---

[32] *See In re Acis Capital Mgmt., L.P.*, No. 18-30264-SGJ-11, 2019 WL 417149, at *11 (Bankr. N.D. Tex. Jan. 31, 2019), *aff'd*, 604 B.R. 484 (N.D. Tex. 2019) ("The record contains substantial evidence of both intentional and constructive fraudulent transfers . . . .").

trial on the merits."). CLO Holdco will suffer no significant harm if the Proceeds remain in the Court Registry and certainly no magnitude of harm that would outweigh the Court's interest in preserving the Debtor's estate. *See In re OGA Charters,* 554 B.R. at 432 ("[T]his Court finds that the balance of harm favors the entry of the preliminary injunction in order to protect potential assets of the estate from dissipation.").

On one hand, keeping the Proceeds in the Court's registry ensures that such funds will not be depleted, and any purported loss concerning the time-value of money is mitigated, as the funds are in an interest-bearing account. On the other hand, any release of such funds to CLO Holdco may deprive the Debtor of its only opportunity to obtain redress for fraudulent or improper transactions involving CLO Holdco or the interests or claims it holds.

Thus, this factor weighs in favor of granting injunctive relieve on a preliminary basis pending trial on the merits.

### D. The Public Interest Will Be Served By Issuance of the Injunctive Relief Sought.

"[E]ntry of a preliminary injunction will serve the public interest by preserving the status quo and preserving [the Debtor's] assets for the benefit of whomever is entitled to them after trial." *In re Atlas*, 2014 WL 172283, at *6; *see also In re OGA Charters,* 554 B.R. at 432 (holding that it is in the public interest to "maintain[] the status quo by not dissipating any potential assets of bankruptcy estate.").

As set forth above, CLO Holdco and its parent entities are very closely associated with Dondero, who has previously engaged in schemes and other behaviors designed to evade creditors, including fraudulent asset transfers.[33] The evidence related above clearly establishes a prima facie case that the disputed Proceeds are potential assets of the Debtor's bankruptcy estate. Courts

---

[33] *See id.*

routinely grant motions for preliminary injunctive relief and find that it is in the public interest to do so, in order to preserve the status quo and prevent dissipation of assets pending trial. *In re OGA Charters,* 554 B.R. at 432.

Thus, this factor weighs in favor of this Court granting the Committee's request for a preliminary injunction to preserve the status quo and to further preserve any "assets that can be potentially used to satisfy valid claims against the bankruptcy estate." *In re OGA Charters,* 554 B.R. at 432.

### IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Committee respectfully asks that this Court grant the Motion for Preliminary Injunction, as this would preserve the relative position of the parties and the status quo, and further, preserve assets that can be potentially used to satisfy valid claims against the bankruptcy estate. The Committee respectfully requests that this Court grant such other and further relief as it deems necessary and proper.

Dated: December 29, 2020        SIDLEY AUSTIN LLP
        Dallas, Texas            */s/ Paige Montgomery*
                     Paige Holden Montgomery
                     Penny P. Reid
                     Juliana L. Hoffman
                     2021 McKinney Avenue
                     Suite 2000
                     Dallas, Texas 74201
                     Telephone: (214) 981-3300
                     Facsimile: (214) 981-3400

                          -and-

                     Matthew A. Clemente (admitted *pro hac vice*)
                     Dennis M. Twomey (admitted *pro hac vice*)
                     Alyssa Russell (admitted *pro hac vice*)
                     One South Dearborn Street
                     Chicago, Illinois 60603
                     Telephone:  (312) 853-7000
                     Facsimile:  (312) 853-7036

                     COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the Official Committee of Unsecured Creditors has conferred with counsel for the Debtor and counsel for CLO Holdco, Ltd. regarding the relief sought in this motion.  Counsel for CLO Holdco, Ltd. opposes the relief requested in this motion.

Dated: December 17, 2020

                     */s/ Paige Montgomery*
                     Paige Holden Montgomery
                     *Counsel for the Official Committee*
                     *of Unsecured Creditors*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was sent via electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case on December 29, 2020.

/s/ *Paige Montgomery*
Paige Holden Montgomery
*Counsel for the Official Committee*
*of Unsecured Creditors*

## **<u>EXHIBIT 1</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Debtor. | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | |
| Plaintiff, | Adversary Case No. 20-03195 |
| v. | |
| CLO HOLDCO, LTD. | |
| Defendant. | |

**ORDER GRANTING THE MOTION FOR PRELIMINARY INJUNCTION
AGAINST CLO HOLDCO, LTD.**

On this day, the Court considered the Official Committee of Unsecured Creditors' (the "Committee") *Motion for Preliminary Injunction Against CLO Holdco, Ltd.* (the "Motion"). Based on the pleadings on file, the Court finds that good cause exists to grant the Motion.

**IT IS THEREFORE ORDERED** that

1. The Motion is **GRANTED**.

2. The Proceeds shall continue to be held in the Registry of the Court until such time as the Adversary Proceeding is completed.[2]

### End of Order ###

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Motion.