**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Telecopier: (817) 878-9280

COUNSEL FOR THE CHARITABLE DEFENDANTS

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-sgj11 |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT,** | § | |
| **L.P.,** | § | Chapter 11 |
| | § | |
| Debtor | § | |

1



| | |
|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, § § § | |
| Plaintiff, § § | |
| vs. § § | Adversary No. 20-03195<br>Relates to Dkt. No. 70 |
| CLO HOLDCO, LTD., CHARITABLE DAF HOLDCO, LTD., CHARITABLE DAF FUND, LP, HIGHLAND DALLAS FOUNDATION, INC., THE DUGABOY INVESTMENT TRUST, GRANT JAMES SCOTT III IN HIS INDIVIDUAL CAPACITY, AS TRUSTEE OF THE DUGABOY INVESTMENT TRUST, AND AS TRUSTEE OF THE GET GOOD NONEXEMPT TRUST, AND JAMES D. DONDERO, § § § § § § § § § § § § § | |
| Defendants. § | |

## OBJECTION TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION TO FURTHER EXTEND THE STAY OF THE ADVERSARY PROCEEDING THROUGH OCTOBER 15, 2021

CLO HoldCo, LTD. and Highland Dallas Foundation, Inc. (the "Charitable Defendants") file this Objection to the *Motion for Further Extend the Stay of the Adversary Proceeding Through October 15, 2021* (Dkt. No. 70) (the "Second Stay Motion") filed by the Official Committee of Unsecured Creditors (the "Committee") and Litigation Trustee (together, the "Movants").

### PRELIMINARY STATEMENT

1.     The Movants' latest attempt to delay adjudication of this adversary proceeding (the "Adversary Proceeding") is as baseless as its previous delays. The Committee was granted standing to investigate and pursue Estate Claims in January 2020 and thereafter engaged in extensive and costly discovery, much of which was alleged on an emergency basis. *See* Case No. 19-34054-sgj11 ("Bankruptcy Case"), Dkt. No. 353-1 (charging Committee with pursuit of Estate

2

Claims, defined as causes of action against Debtor related entities specifically including DAF entities), Dkt. Nos. 808, 872 (discovery pleadings filed by the Committee); Dkt. Nos. 570, 883, 1244, 1655, 2221 and 2611 (Committee's financial advisor fee statements); Dkt. Nos. 569, 831, 1296, 1853, 2240, 2585 (Committee's counsel fee statements).

2.    Now some twenty (20) months later, and some eight (8) months after the filing of the initial complaint (which was supposed to have been filed by the end of June 2020 and which was amended before service), the Movants cite to their newly propounded Rule 2004 discovery in the underlying Bankruptcy Case as cause to stay this Adversary Proceeding further, so that the Movants can, through extra Rule 2004 discovery, bolster the allegations in the Complaint and/or add new causes of action.  *See* Dkt. No. 70 (stating that an additional stay of the Adversary Proceeding is needed to provide "additional necessary time to determine whether to seek leave to amend the complaint").

3.    In other words, the Committee, having filed an adversary proceeding, after having twenty (20) months to investigate Estate Claims, and having charged the estate millions of dollars, now seeks to stay the same proceeding so it can do further discovery outside Rule 26 process to bolster its complaint.  While at the same time asserting (falsely) that the Rule 2004 discovery will not include any discovery relevant to the transaction made the subject of the complaint (which the Movants describe as the "CLO HoldCo Transaction").  But this is a feint, and the Movants know it.

4.    There is no single transaction alleged within the complaint (Dkt. No. 6) (the "Complaint"), as shown below.  Simply, the Movants should not be allowed to use FED. R. BANKR. P. 2004 ("Rule 2004") to supplement any of their allegations in their Complaint, or deal with the subject matter of the Complaint, and therefore the Court should deny the requested stay so the

defendants can proceed to have their day before the required Article III court, have its motion to dismiss heard (and granted), and be shed of the Committee and its antics.

**BACKGROUND**

5.      In the underlying bankruptcy case, Case No. 19-34054, on October 29, 2019, the Committee selected Sidley Austin LLP ("Committee Counsel") as counsel.  *See* Bankruptcy Case, Dkt. No. 2306, ¶3. On December 17, 2020, the Committee through Committee Counsel commenced this Adversary Proceeding against the defendants (the "Defendants"). Dkt. No. 2.  On April 14, 2021, the *Charitable Defendants filed a Motion to Dismiss, or in the alternative, Motion for More Definite Statement* (Dkt. No. 23) (the "Charitable Defendants Motion to Dismiss") and the *Motion to Withdraw the Reference* (Dkt. No. 24) (the "Charitable Defendants Motion to Withdraw the Reference").

6.      Several other Defendants filed motions to dismiss (Dkt. Nos. 22, 25, 30, 32), collectively with the Charitable Defendants Motion to Dismiss, the "Motions to Dismiss"), and motions to withdraw the reference (Dkt. No. 33) (collectively, with the Charitable Defendants Motion to Withdraw the Reference, the "Motions to Withdraw the Reference").

**a.   The First Agreed Extension**

7.      Pursuant to Local Bankruptcy Rule 5011-1, on April 16, 20211, the Court provided a setting for a status conference on the Motions to Withdraw the Reference for May 25, 2021. Before the Charitable Defendants filed the notice of setting, the Committee requested an extension of time to oppose the Motions to Dismiss and Motions to Withdraw the Reference to May 21, 2021.  At the time of its request, the estate had already employed Teneo Capital, LLC (the "Litigation Trustee").  *See Application for Order Pursuant to Section 1103 of the Bankruptcy Code Authorizing the Employment and Retention of Teneo Capital, LLC as Litigation Advisor to the*

4

*Official Committee of Unsecured Creditors Effective April 15, 2021* (the "Application to Employ the Litigation Advisor") [Bankruptcy Case, Dkt. No. 2306] (noting that Teneo was retained the day before the Committee requested its first extension).

8. Despite having retained the Litigation Trustee the day before and with full knowledge of the role of the Litigation Trustee, the Committee did not disclose the retention to the Charitable Defendants nor that it would serve as the basis for the Committee to seek a stay from the Court at the expiry of the agreed extension. Because none of this was disclosed to the Charitable Defendants, the Charitable Defendants agreed to an extension of the response deadline to May 25, 2021. In light of the agreed extension, the Committee and Defendants cancelled their proposed discovery conference.

**b. The First Motion to Stay Adversary Proceeding**

9. At the expiration of the agreed extension, on May 18, 2021, the Committee filed a *Motion to Stay the Adversary Proceeding for Ninety Days* [Dkt. No. 46] (the "First Motion Stay"). The Committee asserted that it needed an additional ninety (90) days in the form of a stay of the Adversary Proceeding so that the Litigation Trustee could have the "necessary time to familiarize itself with the Adversary Proceeding, so as to adequately and efficiently defend the Motions to Withdraw the References, the Motions to Dismiss, and to effectively manage the litigation of the Adversary Proceeding in its entirety." *See* First Motion to Stay, ¶11.

10. The Charitable Defendants opposed the requested stay, noting that the Litigation Trustee had been retained on April 15, 2021, one day after the Motion to Withdraw the Reference and the Motion to Dismiss were filed (*see* Dkt. No. 50), and therefore, the Litigation Trustee had already had forty (40) days to "familiarize himself" with the Committee's Complaint (with which, one would think, counsel who drafted it would be familiar and could easily explain), so that the

5

Committee could mount a purely legal defense first to the Motion to Withdraw the Reference—which is of course far more time than the twenty-four (24) days provided by Local Bankruptcy Rule 7007-1(e), and second to the motion to dismiss under Rule 12(b)(6) (also a legal matter). Of course, the Committee Counsel who filed the Adversary Proceeding (after some 8 months during which it held the authority to investigate and prosecute Estate Claims) will continue on to represent the Litigation Trustee (we guess). Presumably, Committee Counsel could advise their client on an appropriate legal defense to a motion to withdraw the reference (a purely legal issue) during the April through August time frame.

11. Further, the Charitable Defendants noted that the Court had in effect already stayed the Adversary Proceeding pending disposition of the Motion to Withdraw the Reference pursuant to FED. R. BANKR. P. 5011(c). The Court had already cancelled hearings on the Motions to Dismiss, and the Charitable Defendants advised the Court and the Committee that it did not oppose staying these other matters, while the Motion to Withdraw the Reference was decided. However, the Charitable Defendants urged the Court to conduct a status conference on the Motions to Withdraw the Reference and prepare its report and recommendation to the district court pursuant to Local Bankruptcy Rule 5011-1(a), (b) so that the parties could at least know before which court the Adversary Proceeding will be litigated.

12. At the May 20, 2021 hearing on the First Motion to Stay, the Committee argued that there could be no harm to the Charitable Defendants and again cited the Court to its characterization of entities related to Mr. Dondero as "byzantine". In an attempt to distinguish the case law cited to by the Charitable Defendants, the Committee essentially argued that only a plaintiff could ever be harmed by stays of litigation. But of course, this is not true. As courts have found time and time again, it is "clear that a court must tread carefully in granting a stay of

proceedings, since **a party** has a right to a determination of its rights and liabilities without undue delay." *Ohio Env't Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977).

13.     At the time of the hearing on the First Motion to Stay, the Committee's sole cited-to justification for staying the Adversary Proceeding was that the Litigation Trustee needed almost double the time that litigants are given by local rule to mount a purely legal defense to Motions to Withdraw the Reference, even though his counsel, who filed the Adversary Proceeding, ostensibly after a reasonable inquiry, and after at least $9 million in charged lawyer time, should have become sufficiently "familiarized" with the Bankruptcy Case to provide advice to the now Litigation Trustee.  And while the Committee and the Litigation Trustee were already working on their Rule 2004 discovery which is the basis for the Second Motion to Stay, the Committee declined to inform the Charitable Respondents or the Court that it would seek an additional stay based on its forthcoming Rule 2004 discovery requests.  Bankruptcy Case, Dkt. No. 2570 (numerous time entries before the May 20, 2021 hearing regarding Rule 2004 strategy, drafting, and research and discussions with the Litigation Trustee regarding the same).

14.     The Court nonetheless granted the Motion to Stay, resting its decision on two fundamentally flawed grounds.  First, the Court found that because it would take the district court at least ninety (90) days to decide the Motions to Withdraw the Reference, the Committee's requested ninety (90) day stay was of no moment.  But of course, the Committee's ninety (90) day stay will in fact be a one-hundred (180) day delay if the Court is correct that the natural process will take ninety (90) days to conclusion of the Motions to Withdraw the Reference.  Second, the Court imputed an improper motive to the Charitable Defendants' objection, finding that the Charitable Defendants' unspoken aim was to make the Litigation Trustee work for free.  But the

Charitable Defendants introduced the *Application to Employ the Litigation Trustee* as Exhibit 1 which expressly stated that the Litigation Trustee's employment would be *nunc pro tunc* and in fact would be compensated for his time dating back to April 15, 2021. *See* Dkt. No. 54.

15.     The Charitable Defendants noted these manifestly erroneous conclusions of the Court in its *Post-Hearing Memorandum* [Dkt. No. 57]. The Court swatted these suggestions away.

**c.  The Rule 2004 Motion in the Bankruptcy Case**

16.     Some seventy (70) days into the granted ninety (90) day stay, the Committee and Litigation Trustee filed their *Motion of the Official Committee of Unsecured Creditors and the Litigation Advisor for Entry of an Order Authorizing the Examination of Rule 2004 Parties pursuant to Rule 2004 of the Federal Rules Of Bankruptcy Procedure* [Bankruptcy Case, Dkt. No. 2620] (the "Rule 2004 Motion"). In the Rule 2004 Motion, the Committee and Litigation Trustee are seeking extensive discovery from well over one-hundred parties including the Charitable Defendants and the other defendants in this Adversary Proceeding.

17.     The Rule 2004 Motion is facially improper for many reasons which the Charitable Defendants brief more fully in their opposition to the Rule 2004 which will be filed contemporaneously herewith. But of note, the Committee and/or Litigation Trustee is in possession (whether through documents received from the Debtor or by virtue of the access provided to the Debtor's documents in the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*,) of the requested documents from the Debtor, who as the Court is aware provided finance, accounting, tax, legal, trade, facilities, public relation support, and information technology infrastructure support for Charitable DAF Fund, LP, Charitable DAF GP, LLC and any affiliate pursuant to *Second Amended and Restated Service Agreement effective January 1, 2017* (the "Second Amended and Restated Service Agreement").

18.    The Movants cite to the fact that they waited until the end of the section 546 of the Bankruptcy Code deadline to file the Rule 2004 Motion as "cause" for extending the stay of this Adversary Proceeding.  But the Committee has been in actual possession of the documents related to the Charitable Defendants for almost a year, and has had full ability to issue Rule 2004 discovery at any point since January 2020 when they were granted to standing in the Final Term Sheet.  The Litigation Trustee, similarly, has been involved in the case since February 2021 and formally retained in April 2021, and is represented by Committee Counsel, who has been entrenched in the Bankruptcy Case and discovery specific to the Charitable Defendants for over a year.  *See* Phillips Dec. ¶3 (*Fourth Request for Production of Documents* (propounded on July 8, 2020)).

### d.    The Second Motion to Stay Adversary Proceeding

19.    On July 29, 2021, the Movants filed their Second Motion to Stay requesting the Adversary Proceeding be stayed for an additional fifty-seven (57) days, or until October 14, 2021, to: provide the Litigation Trustee "the additional necessary time to determine whether to seek leave to amend the complaint filed in the Adversary Proceeding, and/or file additional Causes of Action, add other parties, or add factual allegations unrelated to the current subject of the Adversary Proceeding to the Complaint, and to ensure that the Complaint or any amended complaint and any additional Causes of Action that may be commenced may be litigated on a consolidated basis." *Id*.

### LEGAL ARGUMENT

20.    When deciding whether to grant a discretionary stay, courts should consider the competing interests which will be affected by granting or refusal to grant a stay.  *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 483 (N.D. Tex. 2016) (citing to *Landis v. N. Am. Co.*, 299 U.S. 248, 255, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936)).  But the "party seeking a stay bears the

burden of **justifying a delay by making a clear case of hardship or inequity in being required to go forward**." *Ohio Env't Council*, 565 F.2d 393, 396. (quoting *Landis,* 299 U.S. at 255) (emphasis added). This party "**bears a heavy burden to demonstrate that it is appropriate**." *Mott's LLP v. Comercializadora Eloro, S.A.,* 507 F. Supp. 3d 780, 785 (W.D. Tex. 2020); *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co*., 761 F.2d 198, 203 n.6 (5th Cir. 1985). But rather than attempting to meet this burden by showing hardship or inequity, the Committee and the Litigation Trustee simply assert that they want more time to bolster their claims made against the Charitable Respondents nine months ago.

   **a. Even assuming *arguendo* that the Committee and Litigation Trustee's justification for needing an additional stay were plausible, it does not meet the heavy burden required.**

   21.    The most obvious flaw in the Committee and Litigation Trustee's position is that they cannot obtain any discovery related to this Adversary Proceeding in the context of Rule 2004 in the Bankruptcy Case yet they seek to stay this Adversary Proceeding so that they will be able to amend their Complaint in this Adversary Proceeding based on their Rule 2004 in the Bankruptcy Case. The Committee and Litigation Trustee's reasoning is circular, at best.

   22.    The pending proceeding rule provides that: "[i]f an adversary proceeding or a contested matter is pending, then the parties to that proceeding or matter may no longer utilize the liberal provisions of Bankruptcy Rule 2004 and should utilize the discovery devices provided for in Rule 7026 through 7037." *See* Colliers on Bankruptcy, ¶2004.01[8]; Local Bankruptcy Rule 2004-1(b). The Committee and the Litigation Trustee attempt to escape the pending proceeding rule by stating that their Rule 2004 discovery has "multiple carveouts to exclude discovery related to the CLO Holdco Transaction." *See* Second Motion to Stay, ¶14. This fundamentally misstates the nature of this Adversary Proceeding and the content of the Complaint.

23.     The Complaint recites the formation of CLO HoldCo, the DAF HoldCo, and the DAF and states that: "upon information and belief, Dondero indirectly controls CLO Holdco, DAF Holdco, and the DAF." *See* Complaint, ¶19-25.  Again unsurprisingly, the Committee uses its favorite adjective "byzantine" and offers conclusory narrative throughout the Complaint regarding its allegations of Dondero's control and influence over all of the defendants. *See e.g. Complaint*, ¶¶25 ("Moreover, upon information and belief, Dondero indirectly controls CLO Holdco, DAF Holdco, and the DAF"); 46 ("This control over Dugaboy and the repayment of the Dugaboy Note effectively rendered the Dugaboy Note valueless to the Debtor"); 50 ("[i]ndeed, such a last minute wholesale change only further underscores the control that Dondero had over all parties to the CLO Holdco Transaction."); 56 ("it is clear that Dondero and the Debtor exercise significant control over the various entities involved in the CLO Holdco Transaction, including CLO Holdco").  In fact, the Committee specifically "seeks a judgment that DAF Holdco, the DAF, and CLO Holdco are corporate fictions of Dondero and the Debtor (controlled by Dondero) and used to perpetrate a fraud directed by Dondero, and thus, Dondero, DAF Holdco, the DAF, and CLO Holdco are liable for damages pursuant to an alter ego theory," and that each Defendant was part of a conspiracy and therefore are jointly and severally liable. *See* Complaint, ¶¶80, 90.

24.     Given the allegations in the Complaint, the scope of topics that must be excluded from Rule 2004 discovery is much broader than just the CLO Holdco Transaction.  And in fact, given the allegation and request for declaratory judgment that DAF Holdco, the DAF, and CLO Holdco are corporate fictions of Dondero and the Debtor, it is difficult to imagine any discovery topic from those entities that would be permissible.

25.     The Movant's shallow attempt to avoid the Pending Proceeding Rule is to characterize the Complaint and Adversary Proceeding as solely concerning the CLO HoldCo

11

Transaction, which is identical to the equally feeble attempt made by the trustee in *Bennett Funding*. In *Bennett Funding*, a trustee commenced an adversary proceeding against numerous defendants alleging that Patrick Bennett ("P. Bennett") diverted millions of dollars from the debtor to other entities controlled by P. Bennett to pay for the construction of a hotel for he and his wife's ("G. Bennett"), financial benefit. 203 B.R. at 26. Other allegations in the complaint included assertions that P. Bennett used various entities which were owned or controlled by he or his wife to move money and property. *Id*. at 26-27. The trustee served a Rule 2004 subpoena on the wife and other related entities. *Id*. The trustee represented that he was not seeking any discovery related to the hotel transaction which was the only cause of action against G. Bennett, instead the trustee wanted to explore other sources of assets the wife received or owned to determine if there were other assets wrongfully diverted from the debtor. *Id*.

26.     The *Bennett* court rejected this argument, explaining that after review of the adversary complaint:

> [I]t is clear that the Trustee has alleged the creation by the defendants of what can rightfully be described as a **<u>financial superweb</u>**. As such it is difficult at this point, if not impossible, to determine whether and to what extent information gleaned from a Fed. R. Bankr. P. 2004 examination of G. Bennett will not be related to the parties and subject matter covered by the Amended Complaint. **<u>In fact, it appears highly unlikely that even a carefully crafted examination of G. Bennett by the Trustee could not avoid delving into issues regarding the other defendants and subject matter covered in the extensive Amended Complaint</u>**, and thus examination of the issues requested would not be in addition to or beyond the scope of the Trustee's pending adversary proceeding. It appears then that G. Bennett and the parties and subject matter of the Amended Complaint are not easily separable because of the complex relationship between them, and the Court recognizes that use of a Fed. R. Bankr. P. 2004 examination would unavoidably and unintentionally create a back door through which the Trustee could circumvent the limitations of Fed. R. Bankr. P. 7026 *et seq.*, which are properly applied in this instance.

*Id*. at 20-30 (emphasis added).

27. The parallels here are striking, just replace "financial superweb" with "byzantine empire." But even more compelling here, the Committee has actually asserted causes of action for a declaratory judgment for alter ego and conspiracy against the Charitable Defendants. There is no discovery in the Rule 2004 Motion into the Charitable Respondents that would not be "related to" to the issues raised by and the parties that have been made defendants (formally or by allegations made against DAF GP) in the Adversary Proceeding.

28. Yet, the Committee and the Litigation Trustee now cite this impermissible Rule 2004 requests as cause to stay this Adversary Proceeding in which it will be able to seek discovery under FED. R. BANKR. P. 7026, *et seq.* if could prevail over the Motions to Dismiss (which we believe it cannot).

**b. The Committee and Litigation Trustee's justification is belied by their own conduct.**

29. The Committee and the Litigation Trustee assert that they have not had enough time to investigate what claims can be brought against the Charitable Defendants. Unsurprisingly, the Committee and the Litigation Trustee once again decry the "byzantine" nature of the Charitable Defendants as cause for why they have not been able to understand what claims they can bring. But what the Committee and the Litigation Trustee do not include in their Second Motion to Stay is just how long the Committee has been investigating claims against the Charitable Respondents.

30. Pursuant to the Final Term Sheet entered into on January 14, 2020, the Committee was explicitly granted standing to pursue Estate Claims, defined as "any and all estate claims and causes of actions against Mr. Dondero, Mr. Okada, other insiders of the Debtor, and each of the Related Entities, including promissory notes held by any of the foregoing." *See* Complaint, ¶6, Bankruptcy Case, Dkt. No.654-1. Therefore, the Committee, represented by Committee Counsel, has known of its charge to pursue Estate Claims for twenty (20) months.

31. And Committee Counsel has been actively engaged in the Bankruptcy Case since its inception, billing over ten million dollars of its professional time to the estate since its retention. The Committee's financial advisor FTI has spent $1,118,921.50 investigating intercompany transactions and avoidance actions. *See* Dkt. Nos. 570, 883, 1244, 1655, 2221 and 2611. Committee counsel has not broken its time out regarding avoidance actions but has spent $5,995,235.50 on litigation and their time entries reflect **extensive** time and fees engaging in discovery of documents and investigation of Estate Claims. *See* Dkt. Nos. 569, 831, 1296, 1853, 2240, 2585.

32. In fact, back in July 2020, the Committee stated that it had already been working for eight months to investigate Estate Claims, serving requests for production on the Debtor on November 10, 2019, February 3, 2020, and February 24, 2020. *See* Dkt. No. 808, ¶¶2, 7. But what is more is that this investigation was largely specifically targeted at the Charitable Respondents. On July 8, 2020, the Committee served its *Fourth Request for Production of Document*s (the "Fourth Committee RFP") on the Debtor in which it specifically targeted CLO HoldCo, Highland Dallas Foundation; Charitable DAF GP; Charitable DAF HoldCo; and Charitable DAF Fund, LP. And on July 13, 2020, the Committee served CLO HoldCo with its *First Request for Production of Documents* (the "Committee CLO Holdco RFPs"). CLO HoldCo served its Response to the Committee CLO Holdco RFPs on August 12, 2020, **over a year ago**. Phillips Dec., ¶4.

33. CLO HoldCo produced some 6,000 emails from Grant Scott, and it is thought that in fact the Debtor produced some three (3) times more of Grant Scott emails, plus responded to the Fourth Request for production (and the First, and the Second, and the Third). Phillips Dec.,

¶7. Assumedly, any alleged gap information received could have been addressed by the Committee at some point in the past year.

34. Notably, these document requests came after the Committee's months' long possession of the Debtor's general ledger, non-email transactional documents, and audited financials with specific footnotes regarding material, related party transactions. *See* Dkt. No. 845, ¶ 17. The Debtor raised concerns regarding the Committee's dilatory claims investigation in its objection to the Committee's Motion to Compel relating to the Fourth Committee RFP several times, but nonetheless clearly stated that it was fully cooperating with the Committee and supplying documents responsive to the Fourth Committee RFP. *Id*. at ¶¶17, 22 at n.4, 54.

35. To the extent the Committee will argue that although it has had twenty months to conduct discovery and determine causes of action, the Litigation Trustee was not retained until April 2021, Committee Counsel will represent Litigation Trustee. Hopefully, for the sake of the estate, there will be at least some level of efficiency to be gained from Committee Counsel remaining on, given the millions of estate dollars which have gone to develop the Committee Counsel's expertise and for the Committee to conduct its investigations. See also *In re ADPT DFW Holdings LLC*, Case No. 17-31432-sgj, Dkt. No. 1268 at 66:18-67:15, 94:22-95:3 (noting that the committee's investigation into estate claims should be provided to post-confirmation trustees).

36. Further, from the date of retention, the Litigation Trustee was certainly well-aware of this Adversary Proceeding. While it can manage its investigation as it sees fit, knowing of the Adversary Proceeding and not prioritizing investigation of related claims because the Litigation Trustee would just seek another stay is certainly not the requisite "hardship" or "inequity" required to obtain a stay.

15

c. **The Charitable Defendants have and will continue to suffer real, identifiable harm by delay of this Adversary Proceeding.**

37.    At the hearing on the First Motion to Stay, the Committee argued that there is no prejudice in staying the Adversary Proceeding.  But in additional to the generalized harm to a party where its right to a determination of its rights and liabilities without undue delay is curtailed, the Charitable Respondents have suffered and will continue to suffer identifiable harm.

38.    First, on May 27, 2021, given this pending Adversary Proceeding against Highland Dallas Foundation, Highland Dallas Foundation and the almost one-hundred years old The Dallas Foundation (which is one of the most well-respected and largest charitable organizations in the state) lost their D&O insurance coverage.  *See* Patrick Dec., ¶9.

39.    Additionally, as this Court is well-aware, there are significant funds held in the Registry of the Court that belong to CLO HoldCo which were the subject of this *Court's Order Denying Motion for Remittance of Funds Held in Registry of Court* [Bankruptcy Case, Dkt. No. 825] (the "Registry Order").  Pursuant to the Registry Order, the funds belonging to CLO HoldCo were ordered to remain in the Registry of the Court and the Committee was to file adversary proceeding and in connection therewith, an application for injunctive relief to continue to hold the funds in the Registry of the Court, or the funds would be released to CLO HoldCo.  *Id.*

40.    While the Committee filed the Adversary Proceeding and a Motion for Preliminary Injunction (Dkt. No. 7), in the eight (8) months since filing, the Committee has not prosecuted its motion.  The Committee could never meet the "irreparable injury" standard for such an exceptional remedy, because the Fifth Circuit has held many times that it is: "well-established that an injury is irreparable only if it cannot be undone through monetary remedies." *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir.1984); *see also Deerfield Med. Ctr. v. City of Deerfield Beach*,

661 F.2d 328, 338 (5th Cir.1981); *Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir.1981); *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir.1975). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction], are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [weighs] heavily against a claim of irreparable harm." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012); *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir.1975).

41.     But through the continued stay of the Adversary Proceeding, the Court is effectively granting the plainly impermissible relief sought without conducting any hearing or giving any other party the required "fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted." *Custom Teleconnect, Inc. v. Billing Concepts, Inc*., No. CV SA-11-CA-204-FB, 2011 WL 13324104, at *8 (W.D. Tex. Apr. 8, 2011), *report and recommendation adopted*, No. SA-11-CA-204-FB, 2011 WL 13324103 (W.D. Tex. Apr. 25, 2011).

### CONCLUSION

The Committee was charged with investigating Estate Claims in January 2020 and filed this Adversary Proceeding after engaging in extensive discovery from the Debtor and the Charitable Respondents.  But now some twenty (20) months later, having waited until the expiration of the well-known Section 546 deadline is nearly here to issue obviously overbroad and impermissible Rule 2004 discovery, the Committee and Litigation Trustee cite to their own delay and inability as "cause" to stay this Adversary Proceeding.  Such a justification could never meet the high burden of showing of hardship or inequity required to obtain a discretionary stay.

The Second Motion to Stay is unwarranted and the Defendants have the right to ruling s and to proceed further to get the claims thrown out by an Article III court as shown by the previous briefing for the Motion to Withdraw Reference.

**Respectfully submitted:**

**KELLY HART PITRE**

*/s/ Louis M. Phillips*
**Louis M. Phillips (#10505)**
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

and

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

## <u>CERTIFICATE OF SERVICE</u>

I, undersigned counsel, hereby certify that a true and correct copy of the above and foregoing document and all attachments thereto were sent via electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case on this August 16, 2021.

*/s/ Louis M. Phillips*
Louis M. Phillips
